| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:17-CR-194(2) |
| § | |
| ANTONIO RENTERIA-SAAC § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Antonio Renteria-Saac's ("Renteria") *pro se* Motion Denying and Challenging the Jurisdiction of the Above Named Court Over Subject Matter (#112), wherein Renteria asserts that Congress exceeded its power when it enacted the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501-70508, and that his judgment and sentence are void for lack of subject matter jurisdiction. Renteria also filed an Affidavit in Support ("Affidavit") (#113) and a Notice of Void Judgment ("Notice") (#114). The Government submitted a response in opposition (#117). Having considered the motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.   Background

On November 8, 2017, the United States Grand Jury for the Eastern District of Texas returned a three-count Indictment against Renteria and two co-defendants, charging him in Count Two with Conspiracy to Possess with the Intent to Distribute Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. Count Two of the Indictment alleges:

> [O]n or about October 18, 2017, [Renteria and his co-defendants] did knowingly and intentionally combine, conspire, and agree with each other and other persons known and unknown to the United States Grand Jury, to knowingly and intentionally possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine, a schedule II controlled substance, while on board

> a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.
> §§ 70503(a)(1) and 70506(a) and (b) and 21 U.S.C. § 960(b)(3).

On February 26, 2018, pursuant to a non-binding plea agreement, Renteria pleaded guilty to Count Two of the Indictment. As part of his Plea Agreement with the Government, Renteria agreed that the Factual Basis that he signed was true and would be submitted as evidence. In his Factual Basis (#61), Renteria stipulated:

> That [he] and one or more persons in some way or manner made an agreement to knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount [of] cocaine while on board a vessel subject to the jurisdiction of the United States.

He further stipulated that the conspiracy involved at least 450 kilograms of cocaine. On June 20, 2018, Renteria was sentenced to 168 months' imprisonment, followed by a three-year term of supervised release. Renteria did not file a notice of appeal or a motion to vacate, set aside, or correct his sentence. On January 9, 2020, the court received the instant motion. Renteria challenges Congress's constitutional authority to enact the MDLEA and the court's subject matter jurisdiction over his case. He also contends that the Government failed to establish that he was on board a vessel subject to the jurisdiction of the United States. On June 12, 2020, the Government filed its Response, arguing that Renteria's motion should be recharacterized as an untimely motion under 28 U.S.C. § 2255, dismissed as improperly raised, or denied on the merits because the court had subject matter jurisdiction over Renteria's case.

II.   Analysis

    A.   Challenge to Federal Jurisdiction

Renteria does not identify the procedural basis for his motion. "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976)); *accord Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) ("filings of a *pro se* litigant are 'to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"); *Thorn v. McGary*, 684 F. App'x 430, 432 n.2 (5th Cir. 2017) ("We liberally construe briefs of pro se litigants."). Because a *pro se* litigant's motion is not always what it purports to be, a court may sometimes recharacterize a motion that is labeled differently. *See United States v. Elam*, 930 F.3d 406, 409 (5th Cir. 2019) (citing *Castro v. United States*, 540 U.S. 375, 377 (2003)); *Hopes v. Davis*, 761 F. App'x 307, 309 (5th Cir. 2019); *United States v. Bledsoe*, 548 F. App'x 124, 124 (5th Cir. 2013) ("[I]t is the essence of a pro se prisoner's pleading, rather than the label attached to it, that controls how that pleading is characterized." (citing *United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983))).

Here, the Government asserts that a post-conviction jurisdictional challenge is not cognizable unless raised under 28 U.S.C. § 2255 and, therefore, the court should recharacterize Renteria's motion as a § 2255 motion. *See United States v. Gutierrez*, No. 2:11-CR-209, 2014 WL 1248032, at *2 (S.D. Tex. Mar. 24, 2014) (noting that § 2255 provides the statutory basis to consider an attack on the court's jurisdiction in the defendant's original criminal proceedings, and the court must either consider the motion as a § 2255 motion or dismiss the motion for lack of jurisdiction). The court's decision to recharacterize a motion is discretionary. *Elam*, 930 F.3d at 409 (citing *Santora*, 711 F.2d at 42). Due to the statutory restrictions on "second or successive" motions under § 2255, the United States Supreme Court has held that before a district court recharacterizes a *pro se* litigant's motion as the litigant's first § 2255 motion, the court must:

> [1] notify the pro se litigant that it intends to recharacterize the pleading, [2] warn
> the litigant that this recharacterization means that any subsequent § 2255 motion

> will be subject to the restrictions on "second or successive" motions, and [3] provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

*Castro*, 540 U.S. at 383; *accord Elam*, 930 F.3d at 409; *Hopes*, 761 F. App'x at 309.

Renteria may have also intended to raise his motion pursuant to Federal Rule of Criminal Procedure 12(b)(2), which provides: "A motion that the court lacks jurisdiction may be made at any time while the case is pending." Nevertheless, without regard to whether Renteria's jurisdictional attack is characterized as a Rule 12(b)(2) motion or a § 2255 motion, the motion is untimely. In this situation, Renteria's case is no longer pending within the meaning of Rule 12. *See United States v. Mills*, 678 F. App'x 215, 216 (5th Cir. 2017) (indicating that the movant's post-conviction jurisdictional challenge was not raised while his criminal case was pending and, thus, properly dismissed as untimely); *United States v. Briseno-Martinez*, 623 F. App'x 212, 213 (5th Cir. 2015) (noting that once a criminal case is no longer pending, a motion under Rule 12(b)(2) is not authorized); *United States v. Clarke*, 150 F. App'x 969, 970 (11th Cir. 2005); *United States v. Patton*, 309 F.3d 1093, 1094 (8th Cir. 2002) (finding that an action for purposes of Rule 12(b)(2) was no longer pending after the defendant had been convicted and sentenced).

It appears that Renteria's deadline for seeking a writ of habeas corpus has long passed, as 28 U.S.C. § 2255(f)(1) provides a prisoner with a one-year period in which to file such a motion, running from "the date on which the judgment of conviction becomes final," and there is no suggestion that any of the other accrual provisions of § 2255(f) applies. *See* 28 U.S.C. § 2255(f); *United States v. Redd*, 562 F.3d 309, 311 (5th Cir.), *cert. denied*, 558 U.S. 917 (2009). When a federal prisoner, such as Renteria, fails to file a notice of appeal from his conviction, the conviction becomes final for purposes of § 2255 after the 14-day window to file a direct appeal

elapses. *See* FED. R. APP. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or order being appealed; or (ii) the filing of the government's notice of appeal."); *United States v. Duran*, 934 F.3d 407, 410 (5th Cir. 2019); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). "A judgment or order is entered for purposes of this Rule 4(b) when it is entered on the criminal docket." *See* FED. R. APP. P. 4(b)(6). Where, as here, Renteria's judgment was entered on June 21, 2018, and he did not file a notice of appeal, the judgment became final 14 days later, on July 5, 2018. *See United States v. Morgan*, 845 F.3d 664, 666 n.1 (5th Cir. 2017) ("Since no appeal was taken, [the] conviction became final fourteen days after judgment was entered."). Therefore, Renteria had until July 5, 2019, to seek relief under § 2255, but he filed no habeas corpus petition. Nevertheless, even if Renteria had used the correct procedural vehicle and timely filed his motion, his arguments lack merit because the court had subject matter jurisdiction to proceed to judgment and sentence.

    B.    <u>Federal Court Jurisdiction of Drug Cases</u>

Federal courts are courts of limited jurisdiction. Article III of the United States Constitution bestows jurisdiction in federal courts over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. CONST. art. III, § 2. Furthermore, Congress has provided that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231; *United States v. Rojas*, 812 F.3d 382, 390 n.2 (5th Cir.) (stating that the district court had subject matter jurisdiction over a criminal case where the indictment charged the defendants with committing

federal crimes (citing *United States v. Kaluza*, 780 F.3d 647, 654 (5th Cir. 2015))), *cert. denied*, 136 S. Ct. 2421 (2016).

Here, Renteria was charged with a drug crime in violation of the MDLEA, which was enacted by Congress pursuant to the Piracies and Felonies Clause of the United States Constitution. *See* U.S. CONST. art. I, § 8, cl. 10 ("The Congress shall have Power . . . [t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations."); *United States v. Suerte*, 291 F.3d 366, 371 (5th Cir. 2002) (holding the MDLEA represents a limited exercise of the power to "define and punish Piracies and Felonies committed on the high seas, and Offenses against the law of nations"). With regard to the MDLEA, Congress has made the following findings and declarations:

(1) trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States, and

(2) operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States.

46 U.S.C. § 70501; *see United States v. Bustos-Useche*, 273 F.3d 622, 627 (5th Cir. 2001) (recognizing Congressional intent to eliminate jurisdictional impediments to convictions under the MDLEA where "[d]rug smuggling is universally recognized criminal behavior"), *cert. denied*, 535 U.S. 1071 (2002). It is generally recognized that Congress had constitutional authority to proscribe drug trafficking in international waters when it enacted the MDLEA. *See United States v. Davila-Reyes*, 937 F.3d 57, 62 (1st Cir. 2019) ("It is undisputed in this case that the 'vessel without nationality' provision of the MDLEA was enacted pursuant to Congress's authority to

'define and punish . . . Felonies committed on the high Seas' . . . ."); *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir.) (summarizing circuit precedent upholding Congressional authority to enact the MDLEA under Piracies and Felonies Clause), *cert. denied*, 574 U.S. 1025 (2014); *United States v. Ledesma-Cuesta*, 347 F.3d 527, 532 (3d Cir. 2003) (holding that extraterritorial convictions under United States drug trafficking laws are an exercise of power under the Piracies and Felonies Clause); *Suerte*, 291 F.3d at 375 (noting that the Piracies and Felonies Clause contains "the only specific grant of power to be found in the Constitution for the punishment of offenses outside the territorial limits of the United States").

In this instance, the statute under which Renteria was prosecuted constitutes a valid exercise of Congress's power to define and punish crimes involving stateless vessels. *See Suerte*, 291 F.3d at 370 ("Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." (quoting *United States v. Caicedo*, 47 F.3d 370, 373 (9th Cir. 1995))); *United States v. Alvarez-Mena*, 765 F.2d 1259, 1266 (5th Cir. 1985) (rejecting argument that the appellant was immune from the proper exercise of United States's criminal jurisdiction over actions aboard a stateless vessel on the high seas). Moreover, the court has subject matter jurisdiction over Renteria because he was charged with offenses against the laws of the United States. *See* 18 U.S.C. § 3231; *Rojas*, 812 F.3d at 390 n.2. Congress clearly expressed that jurisdictional issues arising under the MDLEA are preliminary questions of law to be determined solely by the trial judge. 46 U.S.C. § 70504(a); *see United States v. Van Der End*, 943 F.3d 98, 102 (2d Cir. 2019) (explaining that "the function of the MDLEA's jurisdictional language 'is . . . to specify the reach of the statute beyond the customary borders of the United States'" (citing *United States*

*v. Prado*, 933 F.3d 121, 132 (2d Cir. 2019))); *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (discussing "a vessel subject to the jurisdiction of the United States" as a congressionally imposed limit on the subject matter jurisdiction of the courts), *cert. denied*, 556 U.S. 1151 (2009). Furthermore, a person charged with a violation of § 70503 may be tried in any district if the offense "was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district." 46 U.S.C. § 70504(b)(2); *see* "*high seas*," BLACK'S LAW DICTIONARY (11th ed. 2019) ("Under traditional international law, the high seas began 3 miles from the coastline. Under the [United Nations Convention on the Law of the Sea ("UNCLOS"), Dec. 10, 1982, 1833 U.N.T.S. 397], which is generally accepted as international law today, the high seas begin 200 nautical miles from the coastline, outside any country's exclusive economic zone."); *see also United States v. Jho*, 534 F.3d 398, 406 (5th Cir. 2008) (suggesting that the MDLEA incorporates UNCLOS to the extent that it reflects customary international law).

The statutory basis for the United States's jurisdiction, as it pertains to a defendant charged with a violation of the MDLEA, lies in the nature of the individual's conduct and the nature of the vessel. *See* 46 U.S.C. §§ 70502, 70503. The MDLEA provides: "While on board a covered vessel, an individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute a controlled substance." *Id.* § 70503(a)(1). Covered vessels include "a vessel of the United States or a vessel subject to the jurisdiction of the United States." *Id.* § 70503(e)(1). With respect to Renteria, a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality," which, in turn, includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized

to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(c)(1)(A), (d)(1)(B).

In this instance, Renteria states in his Affidavit that he was "stationed in a submarine in International waters" when he was arrested by the United States Coast Guard.[1] The Government's Response includes the affidavit ("Complaint Affidavit") filed with the Criminal Complaint to obtain the warrant for Renteria's arrest. The Complaint Affidavit indicates that Renteria was found on a Self-Propelled Semi-Submersible ("SPSS") approximately 225 nautical miles southwest of the Nicaragua-Costa Rica border, a location well within the high seas covered by the MDLEA. *See* 46 U.S.C. § 70504(b)(2) (establishing venue in any district for a violation of § 70503 or § 70508 that "was begun or committed upon the high seas"). In the Factual Basis (#61), Renteria stipulated that he made an agreement with at least one other person "to knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount [of] cocaine while on board a vessel subject to the jurisdiction of the United States." Renteria's conduct described in the Complaint Affidavit and in his Factual Basis satisfies the elements of § 70503(a). The Complaint Affidavit identifies the SPSS that Renteria was aboard at the time of his arrest as a vessel displaying no flag and whose members claimed no nationality for the vessel. Here, no flag aboard the SPSS and no claim of nationality for the vessel from persons on board meet the criteria for a vessel subject to the jurisdiction of the United States. The United States District Court for the Eastern District of Texas is a district court

---

[1] The court notes that Renteria's Affidavit (#113) is inconsistent with the record. In the Affidavit, Renteria states that he entered into a plea agreement with the Government on February 15, 2019, which is long after Renteria entered a guilty plea on February 26, 2018, and was sentenced on June 20, 2018. Renteria also asserts in the Affidavit that he was stationed in a submarine in international waters between Guatemala and El Salvador on the day he was arrested, whereas the record indicates that he was found approximately 225 nautical miles southwest of the Nicaragua-Costa Rica border.

of the United States with original jurisdiction over federal crimes. *See* 18 U.S.C. § 3231; 28 U.S.C. §§ 124, 132. Consequently, Renteria's assertion that this court lacked jurisdiction to enter judgment against him is without merit.

III. Conclusion

Consistent with the foregoing analysis, Renteria's motion (#112) is DENIED.

SIGNED at Beaumont, Texas, this 30th day of June, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE